# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 13 CR 295 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| OTTRIEZ SANDS, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

A one-count indictment charged Defendant Ottriez Sands with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On April 29, 2014, the jury returned a verdict of guilty against Defendant. Defendant now moves for a judgment of acquittal or a motion for a new trial. For the reasons discussed below, Defendant's motion is denied.

## BACKGROUND

On April 10, 2013, a grand jury returned a one count indictment against Defendant Sands, charging him with being a felon in possession of a firearm. On April 28, 2014, Defendant Sands proceeded to trial. After a two day jury trial, the jury returned a verdict of guilty against Defendant Sands.

## LEGAL STANDARD

### I.  Motion for Judgment of Acquittal – Rule 29

Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any

1

offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case, and the court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014) ("The movant faces a nearly insurmountable hurdle"); *United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *U.S. v. Berg,* 640 F.3d 239, 246 (7th Cir. 2011); *United States v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); *see also United States v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012); *United States v. Dood*y, 600 F.3d 752, 754 (7th Cir. 2010) (stating that the inquiry is "whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt"). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546.

It follows that under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d

713, 717 (7th Cir. 2009); *see also United States v. Severson*, 569 F.3d 683, 688 (7th Cir. 2009).

This strict standard is a recognition that "[s]orting the facts and inferences is a task for the jury." *Warren*, 593 F.3d at 547. The Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

## II. Motion for a New Trial – Rule 33

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Berg*, 714 F.3d 490, 500-01 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722 (7th Cir. 2012) (reviewing a district court's order on a Rule 33 motion for abuse of discretion); *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). "'[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'" *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)), *overruled on other grounds*, 546 U.S. 12, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005).

"'A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.'" *Eberhart*, 388 F.3d at 1048 (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)). The court may grant a new trial if the jury's verdict is

'so contrary to the weight of the evidence that a new trial is required in the interest of justice.'" *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."); *see also United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). Put another way, "[t]he court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)).

## ANALYSIS

As an initial matter, Defendant has raised multiple arguments, many in one simple sentence. He has not developed many of these arguments. The Seventh Circuit has made clear that undeveloped and merely perfunctory arguments like this are waived. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (finding the argument was "decidedly underdeveloped and therefore waived"); *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011) ("As we have said numerous times, undeveloped arguments are deemed waived[.]") (internal quotation marks and citation omitted). *See also Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. Failure to adequately present an issue to the district court waives the issue on appeal."); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ..."). Despite Defendant's waiver of some of these arguments, the

Court will address each argument to the extent possible. In addition, the the Court incorporates by reference its prior rulings on some of these issues.

**I.      Pretrial Rulings**

**A. Motion to Quash**

On November 18, 2013, following a hearing, the Court denied Defendant's motion to quash his arrest and suppress all evidence recovered during the search of his vehicle. (R. 32.) The Court issued a detailed ruling addressing Defendant's motion. The Court incorporates its prior ruling.

**B. Fingerprint Expert**

Defendant also challenges the Court's ruling denying his motion to exclude portions of the government's fingerprint expert. The Court followed the Seventh Circuit's opinion in *United States v. Glover*, 479 F.3d 511 (7th Cir. 2007) in admitting the testimony. In addition, the fingerprint examiner appropriately testified as to the foundational basis for his opinions.

**C. Amended Indictment**

The Court granted the government's motion to amend the indictment without returning to the grand jury to correct a typographical error. Specifically, the Court permitted the government to amend the firearm to correct a typographical error in the serial number of the firearm at issue. The Indictment reflected that the serial number on the firearm charged in the offense was SAV88905. The serial number on the firearm was SAU88905, as confirmed by the evidence including the Firearms Trace Summary that Defendant attached to another motion in the case. (R. 54-2.) The Court permitted the government to amend the Indictment by change the letter "V" in the serial number to the letter "U". This change to correct a typographical error was not material and it did not alter a material element of the charged crime. As such, the amendment

was appropriate. *See United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir. 1991) (permitting amendments "to correct for a typographical or clerical error or a misnomer" such as an incorrect date "unless the particular date is an important element of the charged offense"); *United States v. Cina*, 699 F.2d 853, 857 (7th Cir. 1983). Moreover, Defendant has not identified any prejudice from the amendment and the Court does not find any.

### D. Voir Dire

Defendant next raises some issue regarding the government's proposed voir dire. It is unclear from Defendant's brief statement what his objection is, if the Court asked the venire any of the proposed questions, and what error the Court allegedly committed. Given Defendant's undeveloped argument, he has waived it.

### E. Jury Instructions

Defendant next argues that the Court erred in its rulings on the jury instructions. Defendant does not specify which instructions were erroneous. As the Seventh Circuit teaches:

> We review *de novo* whether jury instructions accurately summarize the law, but give the district court substantial discretion to formulate the instructions provided that the instructions represent a complete and correct statement of the law." *United States v. Dickerson,* 705 F.3d 683, 688 (7th Cir. 2013) (internal quotations omitted). If we determine that the instructions accurately summarize the law, this court reviews the district court's phrasing of the instruction for abuse of discretion. *Id.* Reversal is warranted only where the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Reese,* 666 F.3d 1007, 1021 (7th Cir. 2012).

*United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014). The Court addressed each objection and each proposed instruction in detail at the jury instruction conference. The Court incorporates those rulings by reference.

## II.	Trial

### A. Sufficiency of the Evidence

In order the prove Defendant guilty of being a felon in possession of a firearm, the government had to prove the following elements beyond a reasonable doubt: 1) Defendant knowingly possessed a firearm; 2) Defendant was a felon at the time; and 3) the firearm at issue had been shipped or transported in interstate or foreign commerce. Viewing the evidence in the light most favorable to the government, there was more than sufficient evidence for the jury to find Defendant guilty beyond a reasonable doubt.

Because the parties stipulated to the second and third elements, the Court will address only the evidence supporting the first element. The evidence at trial established that on February 3, 2012, Chicago Police Officers Kevin Kilroy and Matt Darling received a call over their radio to go to the area of 71st and Paxton. In response to the call, Officer Kilroy drove to the area of 71st and Paxton. When they arrived, Officer Kilroy testified that he observed Defendant parked in a Gold Camry and sitting in the driver's seat of the Camry. The Officers also testified that they observed Katon Hunter running from the Camry into the Family Dollar store. Chicago Police Officer Gadzik, who was also at the scene, pursued Hunter into the Family Dollar store. At the same time, Officer Darling went to secure a red vehicle that was parked near the area.

Officer Kilroy immediately exited his car and approached the Camry upon arriving at the location. When he got out of his vehicle, Officer Kilroy had an unobstructed view of Defendant through the front windshield of the Camry. Officer Kilroy saw Defendant Sands move a handgun from his lap to the center console of the Camry. After he observed the handgun, Officer Kilroy drew his firearm and ordered Defendant Sands to exit the Camry. He ordered Defendant to put his hands up and removed him from the vehicle. Officer Kilroy then searched

the vehicle and recovered from a trap area in the center console a .40 caliber Taurus Millennium model PT 140 Pro, serial number SAU88905, containing 10 live rounds.

Officer Matthew Darling also testified at trial. He testified that he saw Officer Kilroy approach the Camry, search the Camry after Defendant was out of the vehicle, and recover a firearm. In addition, the government introduced photographs of the Camry, the trap and the recovered firearm. The government also introduced the firearm into evidence. This evidence was more than sufficient to establish that Defendant knowingly possessed the firearm at issue.

B. **Katon Hunter**

The government sought to admit certain evidence against Defendant regarding baggies of marijuana found at the scene pursuant to Rule 404(b). The evidence showed that Katon Hunter was in the Camry with Defendant on the day in question. When the Officers arrived at the scene, Hunter got out of the Camry and ran into the Family Dollar Store. When Officer Gadzick approached Hunter to detain him, Hunter threw a small Ziploc baggie containing half a gram of marijuana on the ground. Furthermore, when the Officers searched the Camry, they found 13 clear zip lock baggies containing similar quantities of marijuana in the console near the firearm.

The Court declined to admit the evidence against Defendant pursuant to Rule 404(b), but noted that it wanted to hear Defendant's theory of the case before making a final ruling. During trial, Defendant opened the door to the admission of the drugs. Defendant opened the door by arguing that the firearm at issue belonged to Katon Hunter and that Hunter ran from the police because he knew the firearm was his firearm and he wanted to distance himself from it. Given this argument, the Court permitted the government to introduce evidence of the marijuana against Hunter only to demonstrate his motivation for running from law enforcement. The

Court did not permit admission of the evidence pursuant to Rule 404(b) against Defendant. The government only introduced evidence regarding the marijuana in the baggie dropped by Hunter, not the evidence regarding the marijuana found in the Camry. The Court also instructed the jury as to the limited purpose of the evidence of the single bag of marijuana.

Defendant contends that the Court erred in 1) allowing testimony regarding Katon Hunter's "commission of other crimes, wrongs or acts of another"; 2) permitting evidence of the marijuana found on Hunter and in the vehicle; and 3) barring defense counsel from arguing that Hunter put the weapon in the trap and then ran from the gun.

### 1. Defendant Opened the Door to the Testimony regarding the Marijuana

The Court did not err in permitting the government to introduce the evidence of the one baggie of marijuana because Defendant opened the door to this testimony. It was not Rule 404(b) evidence. Defendant's theory that Hunter ran from the police when they arrived at the scene because the firearm belonged to Hunter made the probative value of the marijuana evidence high. Namely, the evidence demonstrated that Hunter had a good reason to run from the police even without knowledge of the gun – he possessed marijuana. Defendant cannot have it both ways – he cannot ask the Court to preclude the government from using the evidence, but then try to use its exclusion to his advantage.

The evidence also was not prejudicial because the Court admitted it only against Hunter and it involved only a small amount of marijuana. The high probative value of the evidence given Defendant's argument was certainly not substantially outweighed by unfair prejudice. Furthermore, the Court did not permit the government to introduce the drugs, just the testimony of the Officer regarding the recovery of the drugs. Moreover, the Court instructed the jury both at the time the government introduced this evidence and at the end of the case that it should not

9

consider the marijuana evidence against Defendant. Specifically, immediately before the government introduced the marijuana evidence after Defendant opened the door, the Court instructed the jury that:

> Ladies and gentlemen, you are about to hear testimony from this witness with respect to certain drugs. The drugs and the testimony about the drugs is not being offered against the defendant in this case and you should not consider those drugs and his testimony with respect to Mr. Sands. Instead, this testimony is being offered as to a motivation for Mr. Hunter and his leaving the vehicle. And you may consider it for that purpose only.

In addition, at the end of the case, the Court again instructed the jury:

> You have heard testimony regarding marijuana that was recovered from Katon Hunter. This testimony is not being offered against the defendant and you should not consider it against him.

As the Seventh Circuit has noted, jurors are presumed to follow a court's instructions. *See United States v. Roux*, 715 F.3d 1019, 1026 (7th Cir. 2013); *United States v. Keskes*, 703 F.3d 1078, 1085 (7th Cir. 2013).

## 2. Defendant's Theory of the Case

Next, Defendant contends that the Court erred when it precluded him from arguing that Hunter put the weapon in the trap. As an initial matter, defense counsel did make this argument in his opening statement thus the jury heard this theory:

> So, Katon Hunter looks at what's going on and this car is coming straight at him and he takes his gun out of -- off of his possession. Now, at this point, this console in the trap is open and Kilroy – I'm sorry, Hunter -- wants to get out of there as quickly as possible. He takes the gun, he drops it in the trap and he opens the door and he runs. He runs so fast that he does not go ahead -- he does not go ahead -- and close the door at all. And what he's running from is he's trying to get away and put as much distance as possible between him and that weapon, his weapon, the weapon that he went ahead and brought into the car. And that's the way this took place. My client goes ahead and sees this and he goes ahead and closes the console.

A defendant may not argue his theory of the defense unless the evidence in the case supports the theory. See United *States v. Vargas*, 689 F.3d 867, 877 (7th Cir. 2012) (the evidence in the case

must support the theory of the defense). Here, Defendant did not have any evidence to support this argument.

Furthermore, Defendant was hardly prejudiced from this minor limit on his closing argument. In fact, Defendant argued to the following to the jury:

> I said to you in opening that Katon Hunter was running, not from or about half a gram bag of marijuana but he was running from this gun, his gun, that he wanted to put as much distance between himself and this gun as possible.
>
> Now, there are a couple of phrases that come to mind and the government makes light about the fact that this gun could have been Katon Hunter's, one of which is hot potato, and another is leaving Mr. Sands to hold the bag. The bottom line on it is, is that Katon Hunter was in that car. He was right next to that console. And he fled. And he fled for some reason. Now, the government, I think, would be saying to you that he was fleeing because of this marijuana. Half a gram of marijuana, which is a class C misdemeanor in Illinois and actually, as I understand it, may not even be that anymore.

The Court did not err.

### C. Closing Arguments

Defendant next argues, without any citation to legal authority, that the Court erred in denying Defendant's motion to exclude Officer Kilroy from the courtroom during closing arguments. Defendant asserts that Officer Kilroy stared at the jury and intimidated them. This assertion is baseless. Defendant never raised this issue with the Court during closing arguments and the Court did not observe Officer Kilroy acting improperly. Defendant does not, and cannot, articulate any prejudice he suffered from the Officer observing closing arguments. This argument fails.

### D. Jury Challenges

Defendant also offers baseless arguments regarding the jury. Defendant argues that the jurors were not suitable for service because the jury panel was "a second week panel." (R. 85.) This argument is mere speculation and conjecture. Defendant failed to raise this issue during

jury selection and never requested a new panel. Defendant additionally contends that the Court refused to exclude certain jurors with hardships "in part because of the limited number of jurors that were left for selection." This assertion is patently false. The Court addressed each of the hardships and specifically asked defense counsel if he wanted to raise any particular venire members with the Court who claimed hardship. Defense counsel did not. Furthermore, contrary to Defendant's contention, the Court did not refuse to excuse jurors "because of the limited number of jurors that [sic] were left for selection." In fact, the Court told the parties that they could obtain additional venire members for jury selection the next morning, if necessary. Finally, Defendant contends that the jurors were not paying attention during the trial. Defendant failed to identify any jurors during trial who were not paying attention. Moreover, the Court observed the jury paying close attention to the evidence throughout the trial. These arguments are unsupported.

### E. Officer Gadzik

In advance of trial, the Court granted Defendant's motion in limine precluding the officers from testifying that they worked on a gang crimes task force. Despite this ruling, during his testimony, Officer Gadzik testified that he worked as a member of a gang crimes task force. This was a violation of the Court's order and should not have happened. Nevertheless, Defendant was not unduly prejudiced from this brief comment by Officer Gadzik. Given all of the evidence in the case, this one statement did not prejudice Defendant.

### F. Grand Jury Transcripts

Defendant next objects that he did not receive all grand jury transcripts from the case. Because the witness who testified before the grand jury did not testify at trial, the government

did not have to produce the grand jury transcript.  *See* 18 U.S.C. § 3500; *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)

G. **Variances**

Defendant contends that the Court erred in preventing him from arguing to the jury inconsistencies between the government's proof and the facts alleged in the indictment. The indictment consists of one paragraph alleging the elements of the crime and the firearm at issue. It is hard to imagine any inconsistencies between this one paragraph and the proof at trial, and Defendant certainly has not identified any. This argument fails.

H. **Other Objections**

Defendant also argues that 1) the Court erred in "admitting certain hearsay evidence"; 2) the government's closing argument was "unduly prejudicial"; 3) the "indictment and the proceedings were fundamentally and manifestly unfair"; 4) the Court erred in not sustaining Defendant's objections during closing arguments; and 5) the government personally vouched for witnesses during closing arguments. Based on Defendant's one sentence arguments and failure to cite the record or any law, these argument are too weak for the Court to address.

**CONCLUSION**

For these reasons, the Court denies Defendant's motion for a judgment of acquittal and motion for a new trial.

Dated: June 18, 2014

AMY J. ST. EVE
United States District Court Judge